IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHEN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ELORAC, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT** |
| RICK HENSON, KMM | ) | |
| PHARMACEUTICALS, LLC, and | ) | **Jury Trial Demanded** |
| STAYMA CONSULTING | ) | |
| SERVICES, LLC | ) | |

Defendants.

Plaintiff Elorac, Inc., by and through its undersigned attorneys for its Complaint against Defendants Rick Henson, KMM Pharmaceuticals, LLC, and Stayma Consulting Services, LLC, states as follows:

### Introduction

1. Elorac, Inc. ("Elorac") is a pharmaceutical company that manufactures and markets a prescription-only wart treatment under the brand name UltraSal®-ER. UltraSal-ER is the only wart-removal prescription drug made with a patented extended-release salicylic acid and with unique virucidal properties.

2. Defendant Rick Henson ("Henson"), though his companies, Defendants KMM Pharmaceuticals, LLC ("KMM") and Stayma Consulting Services, LLC ("Stayma"), manufactures (or causes to be manufactured), markets, sells and promotes a product, labeled with the National Drug Code ("NDC") number 52187-522-10, known variously as Salicylic Acid 28.5% and Salicylic Acid 28.5% Extended Release (the "KMM Product"). The KMM Product also purports to be a prescription-only treatment for warts. Henson, KMM, and Stayma (collectively, "Defendants") have labelled the KMM Product such that it appears to be a generic

equivalent to UltraSal-ER, but it is not. The KMM Product lacks both the extended-release salicylic acid and the virucidal properties of UltraSal-ER.

3. When Defendants originally listed the KMM Product with the Food and Drug Administration ("FDA"), in approximately June 2015, Defendants did not include "extended release" in the product labelling for the KMM Product. (Ex. 1, Drug Information and Label for NDC 52187-522-10, June 2015 revision.) However, at that time Defendants improperly represented to First Databank, Inc., an independent company that provides information to health care providers and pharmacists regarding generic equivalents to name brand medicines, that the KMM Product had extended-release delivery and was a generic equivalent to UltraSal-ER. This misrepresentation caused pharmacists and healthcare professionals to substitute the KMM product when making or filling prescriptions for UltraSal-ER.

4. When Elorac became aware of this misrepresentation, it informed Defendants Henson and KMM that the two products were *not* equivalent. (Ex. 2, August 31, 2015 Letter to Rick Henson and KMM Pharmaceuticals, LLC.) Elorac likewise informed First Databank of the incorrect designation. In response, First Databank stopped identifying the KMM Product as a generic equivalent to UltraSal-ER. First Databank's decision to reclassify the KMM Product reduced but did not entirely curtail substitution of the KMM Product for UltraSal-ER at the retail level.

5. However, around May 2016, in order to increase the sales that the KMM Product could pilfer from Elorac's UltraSal-ER, Defendants changed the label of the KMM Product, adding "extended release" to the labelling, and submitted this new false label to the FDA, in violation of 18 U.S.C. § 1001, *et seq*. (Ex. 3, Drug Information and Label for NDC 52187-522-10, May 2016 revision.) Defendants changed the label of their product, but did not change the

underlying product formulation at all. Defendants' product does not contain ingredients that would produce the now-advertised extended-release effect, in contrast to UltraSal-ER's use of a patented extended-release salicylic acid. Moreover, in spite of the KMM Product's claim of having a "virucidal solution," its list of ingredients does not contain any substances with demonstrated anti-viral properties, unlike that of UltraSal-ER. Indeed, *had* Defendants changed the formulation of the KMM Product to have extended-release delivery, they would be in manifest violation of FDA regulations, specifically 21 CFR §207.35(b)(4), because they did not change the National Drug Code ("NDC") number for the Product, as would be required if the formulation had actually been changed.

6. Defendants' deliberate mislabeling caused First Databank to re-designate the KMM Product as a generic equivalent to UltraSal-ER, despite the fact that the KMM Product lacks the extended-release salicylic acid and the virucidal solution that are both included in UltraSal-ER. As a result, when health care professionals prescribe UltraSal-ER for patients, pharmacies often substitute the KMM Product for UltraSal-ER under the incorrect belief that the two products are equivalent. Consequently, consumers have been receiving a product that does not have the properties promised on its label.

7. In short, Defendants' labelling and marketing of the KMM Product is false and misleading, is in violation of federal statutes and regulations, and has caused actual confusion in consumers who are prescribed the product as a generic equivalent to UltraSal-ER. It has also caused material damage to Plaintiffs due to lost sales of UltraSal-ER.

**Parties**

8. Plaintiff Elorac, Inc. is a Delaware corporation headquartered in Vernon Hills, Illinois.

3

9. Upon information and belief, Defendant Rick Henson is a resident of the state of Georgia, and is a controlling member of Defendants KMM Pharmaceuticals, LLC and Stayma Consulting Services, LLC.

10. Upon information and belief, Defendant KMM Pharmaceuticals, LLC is a Delaware limited liability company with its principal place of business at 11055 Callington Court, Suwanee, Georgia, the personal home of Rick Henson.

11. Upon information and belief, Defendant Stayma Consulting Services, LLC is a Delaware limited liability company with a mailing address of 5400 Laurel Springs Drive, Suwanee, Georgia.

## Jurisdiction and Venue

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because Elorac has brought claims under federal law, specifically the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

13. This Court has supplemental jurisdiction over Elorac's state law claim pursuant to 28 U.S.C. § 1367(a).

14. Venue is proper in this district because Defendants have caused harm to Elorac in this district and have caused confusion and harm to consumers in this district by selling their mislabeled product in this district and by causing their product to be prescribed as a generic equivalent to UltraSal-ER in this district.

## Factual Allegations

### UltraSal-ER and the KMM Product

15. UltraSal-ER is a prescription medication for the treatment of warts. UltraSal-ER is the only prescription wart medication in the United States market containing a patented extended-release salicylic acid and a virucidal film-forming solution.

16. Elorac began marketing UltraSal-ER in 2014. Elorac has the exclusive right under a license to use a patented extended-release salicylic acid in UltraSal-ER.

17. No other prescription wart product contains the patented extended-release salicylic acid and Elorac's unique anti-viral preservative system; therefore, there is no generic equivalent for UltraSal-ER.

18. Henson owns and controls a number of LLCs, including KMM, that market and sell various drugs, generally generic "knock-offs" of name brand drugs. KMM does not perform any research and development, and has no sales force to promote its products to doctors. Instead, it waits for innovator companies like Elorac to build prescriber awareness and demand for brand-name products, and then relies on substitution of its products at the pharmacy level.

19. KMM is a company that, upon information and belief, is run out of Henson's home. KMM markets and sells the KMM Product, which is a prescription medicine that purports to treat warts.

20. Upon information and belief, Stayma is another of Henson's companies, and Stayma provides certain services for KMM and the KMM Product, including quality assurance, quality control, contract manufacturing relations, and trade distribution. Further, Stayma is the authorized agent to accept service on behalf of KMM in the state of Georgia.

21. The KMM Product does not contain the patented extended-release salicylic acid that UltraSal-ER does. Nor does the KMM Product contain ingredients with the anti-viral properties of the preservative system used in UltraSal-ER.

5

<u>Defendants First Attempt to Falsely Claim their Product was a Generic Equivalent</u>

22. First Databank is a database service that identifies generic equivalents to name-brand drugs for pharmacists and doctors.

23. In July 2015, Elorac became aware that Defendants had submitted its product to First Databank as a generic equivalent to UltraSal-ER, and that First Databank had listed the KMM Product as a generic equivalent to UltraSal-ER in its database.

24. This incorrect designation of the KMM Product as a generic equivalent to UltraSal-ER caused prescriptions of UltraSal-ER to be filled instead with the KMM Product, as pharmacists were deceived into thinking the two products were equivalent.

25. Elorac immediately objected, both to Defendants and to First Databank, noting that Defendants' product did not contain Elorac's patented extended-release salicylic acid, nor did it have the anti-viral preservative complex of UltraSal-ER. (Ex. 2.) Thus, the KMM Product did not provide the virucidal and extended-release benefits of UltraSal-ER to consumers. Elorac further noted that the then-operative label for the KMM Product, as registered with the FDA, made no claim of an extended-release formula. (Ex. 1.) Therefore, Defendants' product could not be a generic equivalent to UltraSal-ER.

26. First Databank agreed with Elorac and stopped identifying Defendants' product as a generic equivalent to UltraSal-ER. Although First Databank's action did not entirely stop the improper substitution of the KMM Product for Elorac's UltraSal-ER at the pharmacy level, it did reduce and constrain the amount of such substitution.

<u>Defendants Falsely Change their Label</u>

27. In response to the change in designation by First Databank, in May 2016 Defendants altered a portion of the label for the KMM Product, changing "salicylic acid 28.5%"

6

to "salicylic acid 28.5% extended release." (Ex. 3.) Defendants registered this new and false label with the FDA, in violation of 18 U.S.C. § 1001, *et seq*.

28. Defendants changed *only* the label; they did not change the formulation of the KMM Product to make it equivalent to UltraSal-ER. Indeed, as described above, Defendants could not have done so, because of Elorac's exclusive right to use the extended-release salicylic acid in UltraSal-ER. In addition, Defendants continued to claim that the KMM Product had a "virucidal solution," even though the KMM Product's list of ingredients provides no basis for such label claim. *Id*.

29. It is further clear that Defendants did not change their formula because their new label is associated with the same NDC number as the previously labelled product. Pursuant to C.F.R. § 207.35(b)(4)(i), if the formulation of the KMM Product had actually been changed to include an extended-release component, Defendants would have had to utilize a new NDC number for the drug. Defendants did not. Instead, Defendants simply changed the label of the KMM Product to falsely indicate that the KMM Product now had extended-release properties that it did not – and could not – have.

30. By registering its false label for the KMM Product with the FDA, Defendants violated 18 U.S.C. § 1001, which prohibits making a materially false statement or representation in a matter within the jurisdiction of the executive branch of the government of the United States.

31. Once Defendants registered their deceptive label with the FDA, First Databank again changed their database, re-designating the KMM Product as a generic equivalent to UltraSal-ER. This designation caused heath care professionals and pharmacists to be deceived into substituting the KMM Product for UltraSal-ER under the misimpression that the KMM Product was a generic equivalent to UltraSal-ER.

Elorac and Consumers are Harmed by Defendants' False Labelling

32. Defendants' product is *not* a generic equivalent to UltraSal-ER. Specifically, the KMM Product does not contain the patented extended-release salicylic acid used in UltraSal-ER. Nor does the KMM Product include ingredients with antiviral properties such as those contained in UltraSal-ER's virucidal solution.

33. By falsely labelling it as such and submitting this false label to the FDA, Defendants have knowingly deceived heath care professionals and patients alike into prescribing and purchasing a product that they believe has qualities that it does not have. Also, to the extent that the KMM Product does not have the same effectiveness, safety, or cosmetic elegance of UltraSal-ER, substitution of the KMM Product for UltraSal-ER harms Elorac's reputation among physicians, health care professionals, and patients.

34. In addition to not receiving the therapeutic benefits of UltraSal-ER, patients who receive the KMM Product as a generic substitute for UltraSal-ER often pay *more* for the KMM Product than they would have for UltraSal-ER. Under a rebate program administered by Elorac, the maximum out-of-pocket cost to any patient for an UltraSal-ER prescription is $80, whereas the retail price of the KMM Product is typically much higher than $80, and KMM offers no patient rebate. Therefore, KMM's deception not only deprives patients of the medicinal benefits of UltraSal-ER, patients do not even receive the cost savings typically associated with using generic drugs.

35. Defendants have also misidentified the "principal place of business" of KMM on the label of the KMM Product. Rather than listing the actual address where KMM conducts business – believed to be Henson's home – the label for the KMM Product lists the Delaware address of KMM's registered agent for service. (Exs. 1 and 3.) KMM conducts no business at

8

this address. This mislabeling is yet another violation of federal regulations; specifically, 21 C.F.R. § 201.1(a).

36. Furthermore, in the KMM Product's drug listing with the FDA, Defendants have falsely claimed that the KMM Product was first marketed in June 2011. (Exs. 1 and 3.) According to the Delaware Department of State, KMM was not even incorporated until June 2012, and the KMM Product could not have been legally marketed prior to its initial drug listing with the FDA, which occurred in June 2015 (Ex. 1).

37. In addition to knowingly and willfully making fraudulent representations to the federal government in violation of 18 U.S.C. § 1001, Defendants also introduced into interstate commerce a drug that is misbranded, a criminal violation of 21 U.S.C. § 331.

## Count I – Lanham Act

38. Elorac realleges and incorporates Paragraphs 1 through 37 above as if fully set forth herein.

39. The Lanham act prohibits "misrepresent[ing] the nature, characteristics, qualities, or geographic origin of . . . goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B).

40. Defendants have willfully mislabeled their product as having extended-release and virucidal qualities that it does not have, and the KMM Product label lists as its principal place of business an address at which no business is conducted. In addition, the drug listing for the KMM Product submitted to the FDA lists a market start date for the KMM Product that is manifestly false.

9

41. Defendants deliberately submitted their false label to the FDA, as well as to private organizations such as First Databank, causing the KMM Product to be incorrectly listed as a generic equivalent to UltraSal-ER, which it is not.

42. As a result, health care professionals have prescribed, and end consumers have purchased, a product that does not have the benefits represented in the Defendants' label.

43. As a further result, Elorac has been materially deprived of sales of UltraSal-ER that would have occurred but for the deliberate misrepresentations and unfair competition of Defendants.

44. Defendants are therefore in violation of the Lanham Act, and are liable to Elorac for damages.

### Prayer for Relief

WHEREFORE, Elorac respectfully requests this Court to award the following:

a) injunctive relief, including an order enjoining Defendants from continuing to mislabel the KMM Product, and to submit its corrected label to the FDA and to First Databank and any other parties to which it misrepresented the nature of the KMM Product;

b) compensatory relief, including treble damages under the Lanham Act, pursuant to 15 U.S.C. 1117(a);

c) attorneys' fees and costs; and

d) other such relief as this Court deems appropriate.

### Count II – Illinois Consumer Fraud Act

45. Elorac realleges and incorporates Paragraphs 1 through 44 above as if fully set forth herein.

46. Defendants mislabeled its product and by that misrepresentation intended to and did cause its product to be incorrectly designated as a generic equivalent to UltraSal-ER.

47. These deceptions occurred in a course of conduct involving trade and commerce.

48. Both Elorac and end-consumers were harmed by these deceptions, as described above.

49. The Illinois Consumer Fraud Act prohibits the "employment of any deception fraud, false pretense, false promise, misrepresentation . . . with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce . . ." 815 ILCS 505/2.

50. Defendants have therefore violated the Illinois Consumer Fraud Act, and are liable to Elorac for damages.

### Prayer for Relief

WHEREFORE, Elorac respectfully requests this Court to award the following:

a) injunctive relief, including an order enjoining Defendants from continuing to mislabel the KMM Product, and to submit its corrected label to the FDA and to First Databank and any other parties to which it misrepresented the nature of the KMM Product;

b) compensatory relief, including punitive damages under the Illinois Consumer Fraud Act, pursuant to 815 ILCS 505/10a;

c) attorneys' fees and costs; and

d) other such relief as this Court deems appropriate.

Dated: December 21, 2016                     Respectfully submitted,

                                                                      ELORAC, INC.

By:   /s/ William M. McErlean
William M. McErlean
R. Joseph Kave
BARNES & THORNBURG, LLP
One North Wacker Drive, Suite 4400
Chicago, IL 60606
tel: (312) 357-1313
fax: (312) 759-5646
william.mcerlean@btlaw.com
joseph.kave@btlaw.com

*Attorneys for Plaintiff*