IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELORAC, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16 C 11522 |
| | ) | |
| RICK HENSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

Up to now defendants Rick Henson ("Henson"), KMM Pharmaceuticals, LLC ("KMM") and Stayma Consulting Services, LLC ("Stayma")[1] have appeared to employ what has seemed to be every trick in the books to foster what the evidence adduced to this point has portrayed as a misleading characterization of their wart removal product (referred to by both sides in this litigation as the "KMM Product") as possessing the important quality of "delayed release," so as to cause the market to regard the KMM Product as the generic equivalent of the wart removal product marketed by plaintiff Elorac, Inc. ("Elorac"), UltraSal-ER, which unquestionably does have that delayed release quality. As explained at length in this Court's March 21 Anticipated Temporary Restraining Order, it then contemplated the issuance of a temporary restraining order ("TRO") for the limited period of time that the competing litigants needed to prepare themselves

---

[1] On March 21 those defendants submitted a Statement of Anticipated Lost Sales for Determination of Amount of Bond, which stated in part at page 1 n.1:

> Although KMM is the entity that sells the KMM Product, KMM Defendants have consolidated Stayma, Henson and KMM as the KMM Defendants for purposes of simplicity.

This memorandum order will employ the same usage as a matter of convenience.

for an evidentiary hearing that would provide this Court with the necessary grist for its mill in determining whether a preliminary injunction should or should not issue.

But now for the first time the KMM Defendants have shifted gears from (1) their prior pattern of relying on lawyer advocacy that had lacked properly presented supporting evidence to (2) their newly-filed "Supplemental Amendment to Memorandum in Support of Defendants' Motion To Dissolve TRO and Initial Response to Motion for Preliminary Injunction" (Dkt. No. 85, referred to here as their "March 27 Filing"), which for the first time appears on its face to present credible evidence that the KMM Product does possess the important "extended release" characteristic[2] -- indeed, evidence indicating that the extended release provided by the KMM Product possesses that quality to an even greater extent than Elorac's UltraSal-ER product. Attached to this memorandum order is a photocopy of pages 2 and 3 of the KMM Defendants' March 27 Filing.

That is the type of evidence that this Court had anticipated receiving from both sides in this litigation in the preliminary injunction hearing that it had expected to conduct at the earliest feasible time, meanwhile planning to enter the anticipated TRO supported by appropriate security as called for in Fed. R. Civ. P. 65(c). And unsurprisingly in light of the tangled web that this complex litigation has continuously woven, with each of the two sides having reacted to each of the other's accusatory submissions with a "you're another!" response, Elorac has just tendered its own newly-filed response (Dkt. No. 96, "Elorac's March 28 Response," comprising

---

[2] This Court should not be misunderstood as having made a finding of fact to that effect. Instead the proffered evidence suffices to serve as the basis for this memorandum order's determination that no TRO is appropriate in the present posture of the case.

seven pages of lawyer-authored presentation plus four exhibits aggregating just under 60 pages) that seeks to challenge KMM Defendants' March 27 Filing.

Unfortunately this Court is unequipped at this point to evaluate the competing submissions of the parties in substantive terms, and it may well turn out that the tactics previously employed by KMM Defendants' counsel have carried over into this newest submission. But as justifiable as Elorac's references to Lightspeed Media Corp. v. Smith, 761 F.3d 699, 709 (7th Cir. 2014) and Jolly Group, Ltd. v. Medline Indus., Inc., 435 F.3d 717, 720-21 (7th Cir. 2006) may ultimately turn out to be in evaluating defense counsel's conduct, this Court's review of Elorac's newest submission finds that its primary complaints are focused on the limited time period that it has had to study the KMM Product and (once again) on the misleading manner in which the KMM Defendants conducted their competitive campaign without hard evidence to do so -- yet the bottom line for present purposes is found in this brief sentence at the foot of page 3 of Elorac's current submission:

> Elorac can now perform the testing that will further support its claims.

In those terms this Court is required to deal with a situation in which KMM Defendants have, but Elorac has not, supplied this Court with the results of scientific evaluation as to the KMM Product's entitlement to claim that it possesses extended release qualities. Under those circumstances the evidence newly tendered for this Court's consideration by KMM Defendants on that score contraindicates the issuance of a TRO of the nature that had been called for by the evidence previously provided by Elorac's key witnesses.

Meanwhile it is not entirely clear that the leopard has changed its spots -- this Court's daily review of ECF filings this morning has disclosed that the KMM Defendants' counsel has contemporaneously (and prematurely) taken an appeal of the not-yet-entered TRO, while at the

same time seeking a stay from this Court. Such a stay is inappropriate -- instead counsel for Elorac and for the KMM Defendants are ordered to appear for the previously set status hearing at 9 a.m. March 30 to discuss further proceedings in the case, in an effort to restore a semblance of order to the case.

                                                       _____
                                                      Milton I. Shadur
                                                      Senior United States District Judge

Date: March 28, 2017

its Motion to Dissolve and Initial Response to Motion for Preliminary Injunction, to present the Court with the results of this testing, (the only scientific testing of the KMM Product that has been submitted in the case), to renew their Objection to the entry of injunctive relief, to renew their demand that the TRO be dissolved and for further relief discussed below.

**SUMMARY OF TEST RESULTS AND DISCUSSION**

After receipt of Plaintiff's Motion for Preliminary Injunction, Defendants engaged third-party Medical Products Laboratories, Inc. ("MPL") to perform in-vitro testing to establish and compare the release profiles of the KMM Product, the UltraSal Product and the Virasal Product. (Raju Dec., attached as Exhibit "1"). MPL utilized a Vertical Diffusion Cell System (a "Franz Cell Test") to determine the rate of release of the ingredients in the three products. The test results are attached hereto as Exhibit "2" (the "MPL Test Results"). This is the only scientific test data for the KMM Product that has been introduced in this action. However, the results are consistent with the Salvona test that were submitted in the Supplemental Declaration of Joel Bernstein, comparing the Virasal Product to the UltraSal Product. (Doc. 71, Ex. 10, p. 4).

The MPL Test Results confirm that the KMM Product does have extended release characteristics. Indeed, as shown by the data reflecting the percent of product release at time intervals, the KMM Product displays an extended release profile than is greater than either the UltraSal Product or the Virasal Product. Moreover, although Plaintiff markets the Virasal Product without indicating that it has an extended release profile and markets the UltraSal Product as having an extended release profile, both the Virasal and UltraSal Products are extended release. Indeed, when release rates are measured over 6 hours, the UltraSal Product is the **least** extended release of the three products. (*Id*).

This means the following:

2

ATTACHMENT

1. All of the scientific test data before the Court shows the KMM Product is properly advertised as being extended release.

2. Dr. Joel Bernstein's representation to the Court that he looked at the label of the KMM Product and deduced that the KMM Product does not extend the release of salicylic acid and does not have ingredients that could act to extend release is not only conclusory, but inaccurate.

3. Plaintiff's representations to the market that its Virasal Product **is not** extended release and its UltraSal **is** extended release are inaccurate. Both products display essentially the same release profile, with the UltraSal Product having the fastest release over 6 hours. (Ex. 2).

4. The KMM Product is more extended release than either the UltraSal or Virasal Products.

5. The Court should not put evidentiary weight on Dr. Bernstein's scientifically untested conclusions. Rather, Dr. Bernstein should be seen as a partisan witness who has guessed at conclusions based solely on his review of the label of the KMM Product and presented his speculation as fact.

6. Defendants were correct when they requested that the Court impose an evidentiary presumption against Plaintiff because it failed to present scientific testing to support its claims and relied on lesser evidence consisting of unsupported conclusions from its Executive Chairman.

## ADDITIONAL RELIEF REQUESTED

Based on the foregoing, in addition to requesting that the Court immediately dissolve the TRO granted in favor of Plaintiff, Defendants request that they be allowed to make an